UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

COMPLAINT FORM

Alfreda Adams,

        Plaintiff,

   V

        Case No. ___3:11cv 1606 PCD___

        **JURY TRIAL DEMANDED**

Timothy B. Yolen, Trustee Lender,
Anthony J. Marchese, Lender,
Anthony Kaiser, Contractor,
Beacon Financial Solutions, LLC, Private Lender,
Peter Gravelle, Broker,
John Gregory, Real Estate Agent,
Vincent Falcone, Esq.,
Daniel Stackpole, Esq.,
Morris Olmar, Esq.,
Thomas E. Gallagher, Police Commissioner.

## A. PARTIES

    1. Plaintiff Alfreda Adams, in a citizen of the State of Connecticut, over the age of eighteen years. Plaintiff lives at 90 Rockdale Road, West Haven, Connecticut 06516. Plaintiff has contracted with and received credit from defendants to construct a single family residence. Plaintiff signed the subject contract using the name Alfreda Adams.

    2. Defendant Timothy B. Yolen is the trustee lender and creditor or arranger of credit within the meaning of 15 USC §1602, with his principal place of business in Granite Square, 700 State Street, New Haven, Connectickur 06511.

3. Defendant Anthony J. Marchese is a creditor and lender within the meaning of 15 USC §1602, with his principal place of business in 1885 Post Road, Fairfield, Connecticut 06824. Insofar as is relevant to this action defendant regularly extends credit and finances mortgages, improvements. renovations. and additions to real property.

4. Defendant Beacon Financial Solutions, LLP, ("Beacon Financial") is a private lender with its principal place of business in 1885 Post Road, Fairfield, Connecticut 06430, and other similar business entities are partnership, sole proprietorship,s, joint ventures or other business entities so organized and controlled and their businesses conducted in such a matter as to make them mere instrumentalities, alter egos, or principal party in fact of the defendants Timothy B. Yolen, trustee Anthony J. Marchese Creditor lender, and Anthony Kaiser, building contractor, or these business entities are subsequent assignees of the named defendants to any interest in real property and are in a continuing business relationship with the named defendants. The true name on these business entities are unknown to plaintiff at the present and plaintiff will amend plaintiff's complaint by substituting the true names when such are discovered.

5. Defendant Anthony Kaiser is a building contractor and construction company with his principal place of business in 11 Village Street, North Haven, Connecticut 06473. Insofar as is relevant to this action, defendant repairs, renovates, remodels and constructs additions to homes and other improvements to real property.

6. Defendant Peter Gravelle is a Broker with his principal place of business in 394 New Haven Avenue - Suite 7, Milford, Connecticut 06460, and other similar business entities are partnership, sole proprietorship's, joint ventures or other business entities so organized and controlled and their businesses conducted in such a manner as to make them mere instrumentalities, alter egos, or principal party in fact of the defendants Timothy B. Yolen trustee/lender and Anthony J. Marchese Creditor lender, Beacon Financial Solution, Kaiser Construction or these business entities are subsequent assignees of the named defendants to any interest in real property and are in continuing business relationship with the named defendants. The true name of these business entities are unknown to plaintiff at the present and plaintiff will amend plaintiff's complaint by substituting the true names when such are discovered.

7. Defendant John Gregory is a Real Estate Agent with his principal place of business in 5 Commenrce St., Shelton, Connecticut 06481, and other similar business entities are partnership, sole proprietorship's, joint ventures or other business entities so organized and controlled and their businesses conducted in such a manner as to make them mere instrumentalities, alter egos, or principal party in fact of the defendants Timothy B. Yolen trustee, Anthony J. Marchese Credotor lender, Peter Gravelle Broker, Beacon Financial Solution, and Kaiser Construction or these business entities are subsequent assignees business relationship with the named defendants, The true name of these business entities are unknown to plaintiff at the present and plaintiff will amend plaintiff's complaint by

substituting the true names when such are discovered.

8. Defendant Vincent Falcone is an attorney with his principal place of business in 334-335 Main Street, West Haven, Connecticut 06516 and other similar business entities are partnership, sole proprietorship's, joint ventures or other business entities so organized and controlled and their businesses conducted in such a manner as to make them mere instrumentalities, alter egos, or principal party in fact of the defendants Timothy B. Yolen trustee, Anthony J. Marchese Creditor lender, Peter Gravelle Broker, John Gretgory Real Estate Agent, Beacon Financial Solution, and Kaiser Construction or these business entities are subsequent assignees of the named defendants to any interest in real property and are in a continuing business relationship with the named defendants. The true name of these business entities are unknown to plaintiff at the present and plaintiff will amend plaintiff's complaint by subsituting the true names when such are discovered.

9. Defendant Daniel Stackpole is an attorney with his principal place of business tin 334-335 Main Street, West Haven, Connecticut 06516 and other similar business entities are partnership, sole proprietorship's, joint ventures or other business entities so organized and controlled and their businesses conducted in such a manner as to make them mere instrumentalities, alter egos, or principal party in fact if the defendants Timothy B. Yolen trustee, Anthony J. Marchese Creditor lender, Peter Gravelle Broker, John Gregory Real Estate Agent, Vincent Falcone an Attorney, Beacon Financial Solution, and

controlled in such a manner as to make them mere instrumentalities, alter egos, or principal party in fact of the defendants Timothy B. Yolen trustee, Anthony J. Marchses Crediter lender, Peter Gravelle Broker, John Gregory Real Estate Agent, Vincent Falcone and attorney, and Daniel Stackpole.

10.  Defendant Morris Olmar is  an attorney with the principal place of business in 419 Whalley Ave.-2Fl.,  New Haven, CT. 06516, and defendant Thomas E. Gallagher is the Police Commissioner with his principal place of business in 200 Sawmill Rd. West Haven, CT 06516.  At all times pertinent, defendant acted under color of law, of a statute, ordinance, regulation, custom, or usage, are in a continuing business relationship with the above named defendants.  The true name of these business entities are unknown to plaintiff at the present and plaintiff will amend plaintiff's complaint by substitution the true names such when such are discovered.

### B. JURISDICTION AND VENUE

11.  This action arises under 18 USC §1963 with supplement state claims for civil conspiracy,  fraudulent concealment,  interference with contractual relationship, and an accounting under 28 USC §1367.

12.  Under 15 USC §1640 et seq., and the Act of Congress known as the  "Consumer Credit Protection Act," 15 USC §1601 et seq.

13.  This Court has jurisdiction of this action under 18 USC §1964(a)  ("Equity") and (c)  ("Damages"), 28 USC §1331  ("federal Question"), 28 USC §1337  ("Regulation of Commerce"), and under the principles of supplemental jurisdiction under 28 USC §1367.

14.  Venue is proper in this District and this Court has personal jurisdiction over the defendants, pursuant to 18 USC

§1965(a), and 28 USC §1391(b), are the Defendants citizens of. residents of. are found within, have agents within, are doing business in, and/or transact their affairs in this District, and the activities of the Defendants which give rise to the claims for relief occurred in this District.

### NATURE OF THE CASE
### (RICO CONSPIRACY)

15. On or about May 2006, the plaintiff contacted defendant Gregory and inquired into the possibility of obtaining a construction loan for the purpose of building a home (hereafter "House-1"). Defendant Gregory stated that he had connects with lenders and would provide plaintiff with the names of lenders. Shortly after the conversation between the plaintiff and Gregory, defendant Gregory gave the plaintiff the telephone number of defendant Gravelle.

16. On or about May 2006, plaintiff had an occasion to speak with the defendant Peter Gravelle. Defendant Gravelle advised the plaintiff that he would look into the prospects of procuring a lender. Whereafter, defendant Gravelle gave plaintiff the telephone number of defendant Garchese of Beacon Financial solutions, LLP, and told the plaintiff that defendant Marchese would provide her with the loan.

17. On or about May 2006, plaintiff was approached by defendant Anthony Kaiser at the site of her new unfinished home and offered to complete the construction of the home. The plaintiff asked Kaiser to present her with a financial proposal to complete the remaining construction of the home. Defendant Kaiser offered to complete the home for $51,000.00.

18. Thereafter, defendant Marchese representing himself as lender, phoned the plaintiff and asked whether the plaintiff had found someone to complete the building construction on House-1. Plaintiff advised defendant Marchese that she was approached by defendant Kaiser who gave plaintiff a proposal to complete the construction of the home for $51,000.00. Defendant Marchese asked the plaintiff for the telephone number of defendant Kaiser which the plaintiff provided.

19. Following the May 19, 2006, signing of a building contract with defendant Kaiser to complete the building of the home for $51,000.00, defendant Marchese closed the $260,000.00 [which included the $51,000.00] dollar loan between the plaintiff and himself with defendant Yolen designated as trustee of the loan.

20. After completing the construction of House-1, on September 1, 2006, plaintiff sought to close on the sale of House-1, but was informed by Ellen who was a representative of defendant Falcone and Stackpole that she own Kaiser an additional $40,000.00, fro the work he performed unrelated to the contractual agreement previously signed by the plaintiff.

21. Plaintiff objected to the additional payment of $40,000.00. because it was not part of the agreed contract. Falcone and Stackpole's representative Ellen informed plaintiff that the sale of House-1, would not be consummated, and that plaintiff would not receive the funds from the sale of House-1, until the plaintiff paid defendant Kaiser the additional $40,000.00. The plaintiff faced with this demand and left with no

other option, complained and Kaiser agreed to waive $6,000.00 of the $40,000.00 with plaintiff having to pay only $34,000.00.

### (THE SCHEME)

22. Subsequent to the sale of House-1, defendant Marchese offered to approve an addition loan for the construction of a second home (hereafter "House-2"). Defendant Marchese advised the plaintiff of the conditions of the loan. Defendant Marchese told the plaintiff that portions of the loan would be disburse after inspection and satisfaction of each stage of the construction. Plaintiff agreed that the conditions of the loan was acceptable. Thereafter, defendant Marchese told the plaintiff that she must use defendant Kaiser to build House-2 or she would not receive the loan. The plaintiff advised defendant Marchese that she was uncomfortable with dealing with Kaiser because of her previous encounters but defendant Marchese refused to enter into the loan agreement without defendant Kaiser being used. Hence the plaintiff reluctantly accepted the offer.

23. Defendant Kaiser gave the plaintiff a proposal with the price of $133,150.00 and an extra $10,000.00 bonus at the sale of House-2. Plaintiff objected to the $10,000.00 bonus, and the defendant Kaiser's thereafter threaten to sue the plaintiff for the $6,000.00 he waived from the prior closing and sale of House-1. Plaintiff was not aware of any $10,000.00 bonus, however following a request to defendants Falcone and Stackpole for all the paperwork in the transition, later discovered that such a $10,000.00 bonus did exist with a stipulation that Kaiser be awarded the contract to build House-2.

24. After plaintiff reviewed the fax document sent by defendant Kaiser to defendants Falcone and Stackpole, plaintiff became upset and personally traveled to the office of defendants Falcone and Stackpole. Upon her arrival at the office she was told by the defendants representative Ellen

that the defendants were not available. Plaintiff then asked Ellen why she was not informed of the $10,000.00 bonus. and Ellen replied by stating she "did not know".

25. Thereafter, plaintiff telephoned Gregory and voiced her dissatisfaction concerning defendant Kaiser attempt to receive additional funds and the stipulation to have him build House-2. In response to the plaintiff's concerns, defendant Gregory told plaintiff that he would look into the matter. Subsequent that conversation, defendant Kaiser told plaintiff that he would forget the additional funds, if she would give him the contract to build House-2 for the sum of $133,150.00.

26. On September 21, 2006, the plaintiff reluctantly agreed to the construction loan in the amount of $215,000.00, with the defendant Marchese's verbal stipulation that defendant Kaiser would be use as the contractor to build House-2 with Falcone and Stackpole's approval.

27. On September 21, 2006, upon signing the closing statements and egal documents, which contained no rescission notice, finance charges, or other relate charges in non-technical manners, defendant Yolen gave a check in the amount of $68,000.00 to defendant Kaiser in his name, to begin the building project along with an additional $4,300.00 in broker's fees to be paid to defendant Gravelle. Plaintiff inquired as to why defendant Gravelle was being paid brokers fees when he had not brokered the loan. Defendant Yolen and Marchese told plaintiff "this is the way we do things because defendant Gravelle brokered House-1".

28. Approximately 45 days after the signing of the contracts, defendant Kaiser completely failed to commence the building project. Plaintiff, therafter, contacted defendant Kaiser and he told plaintiff that he was not going to do the work. Upon receiving this information, plaintiff

immediately complained to defendant Marchese about defendant Kaiser refusal to do the building project.

29. Defendant Marchese then informed the plaintiff for the first time that defendant Kaiser was paid additional money on two separate occasions with the amount totaling $40,000.00, without the plaintiff's knowledge or express written approval and/or authorization.

30. Defendant Kaiser refused to return plaintiff's loan money after several requests. Defendant Yolen informed plaintiff that she was responsible for paying back all portions of the loan, notwithstanding all the money released to defendant Kaiser, was given to him by defendant Yolen without plaintiff's written authorization.

31. Plaintiff attempted to have House-2 completed with the marginal amount of money left in escrow, but was unable to do so because plaintiff was force to pay a monthly $2,600.00 mortgage fee on the loan.

32. Plaintiff contacted defendant Olmar to retain his services concerning the matter with defendant Kaiser as well as defendants Yolen and Marchese. Defendant Olmar scheduled a meeting between defendants Marchese, Yolen and plaintiff. At the meeting Marchese continue to insist that Plaintiff was responsible for paying back all the loan and plaintiff would have to sue Kaiser for the $105,000.00, despite the fact that defendant Yolen released the money to Kaiser. Thereafter, having been informed that there was additional money remaining in escrow, defendant Yolen state that he would only released the money if plaintiff sign a waiver renouncing any wrong doing. Defendant Olmar advised plaintiff that she had no other options and told plaintiff to sign the wavier so that he could receive his retainer fee. Following defendant Olmar's receipt of the retain he did not do anything further.

33. The remaining money in escrow defendant Yolen issued to Felix Sanabria, on December 27, 2006 [$18,700.00]; January 17, 2007 [$21,240.00]; April 2, 2007 [$20,000.00]; and May 7, 2007 [$2,672.00]. The plaintiff realizing that the remaining amount of money in escrow was insufficient to build House-2, contacted defendant Yolen to acquire an additional $25,000.00 to complete the building of House-2. Defendants Yolen, Marchese and Beacon Financial Solutions had refused to authorize any prior loans without a male contractor being present.

34. The plaintiff was required to pay $6.400.00 in mortgage interest for the months of May and June 2007, due to the increase mortgage fees tack on after the closing of the $25,000.00 loan. Following these financial transactions, the plaintiff cognizant that the remaining amount of money in escrow would not be enough money to complete the building of House-2, pleaded with defendant Yolen to delay these addition fees until the sale of House-2 so that the plaintiff would have sufficient funds left to complete the building of House-2. Defendant Yolen flatly refused to cooperate and remain steadfast in receiving the additional funds, despite the plaintiff's apprehensions in having sufficient funds to complete House-2.

35. Plaintiff complained to defendant Thomas Gallagher, (hereafter, Gallagher), concerning the scheme that was being perpetuated by defendant's Yolen, Marchese and Kaiser. Defendant said that their was nothing he could do but assign a Detective to look into the matter. On or about the end of 2007, defendant

Yolen telephoned plaintiff to schedule a meeting for the purpose of building completion of House-2. When plaintiff arrived at the scheduled meeting, to her surprise, defendant Kaiser was present. Plaintiff expressed her discourse with defendant being at the meeting. Defenfant Yolen informed plaintiff that defendant Kaiser had to be at the meeting.

36. During the meeting, defendant's Yolen and Marchese told plaintiff that the matter could be settled if she would give them House-2, and walk away or fact losing House-2 and her primary House that was tied up in the loan.

37. Once it became clear that plaintiff was not going to walk away or give the defendant's House-2, defendant Yolen filed a Foreclosure Complaint under Index Number CV-07-50138055, in and attempt to force plaintiff to release House-2. Thereafter, on August 8, 2008, plaintiff sent defendant Yolen Notice Of Cancellation of Instrument/Contract.

3B. During the foreclosure proceedings, plaintiff learn that defendant Yolen was the attorney who received payment as the attorney of records for the signing during the closing of the contract, the Trustee/Lender who illegally wired defendant Kaiser plaintiff's loan money, the attorney of records who issued various payments to each name defendant within this complaint, and the attorney of records who file and represented the foreclosure proceedings. The Foreclosure was later dismissed.

### D. CAUSE OF ACTION

39. This is a proceeding for a declaratory judgment with

respect to the rights or the plaintiff and for a preliminary and permanent injunction on all matters restraining defendants from maintaining a practice, policy, custom or usage of failing and refusing to comply with certain sections of the Act of Congress known as the "Consumer Credit Protection Act," 15 USC 1601, et seq.; Truth in Lending Act, 15 USC §1641, et seq.; Civil Remedies, 18 USC §1964, et seq.; Equal Credit Opportunity Act, 15 USC §1691; Connecticut Unfair Trade Practices Act, Conn. Stat. §42-110(a), et seq.; C.G.S.A. §52-550 - Connecticut Common Law Fraud; Fraud by Inducement; Duress by Inducement; Breach of Contract; Breach of Fiduciary Duty; for an award of damages to plaintiff, and costs as provided in 15 USC §1640; Attorney's Malpractice; and for rescission of the contracts entered into by plaintiff and the defendants, as provided for in 15 USC §1635.

40.  **Claim I:** The allegations of paragraphs 1-39 are repeated and realllege as if fully set forth as part of the Claim I.

### RICO CIVIL REMEDIES (18 USC 1964(c))

41. Defendant Yolen, Marchese, Kaiser, Beacon Financial Solutions, Gravelle, Gregory, Falcone, Stackpole, Olmar and Gallagher is a person within the meaning of 18 USC §§1961(3), 1962(c), and (d).

42. Defendants Yolen, Marchese, Kaiser, Beacon Financial Solutions, Gravelle, Gregory, Falcone, Stackpole, Slmar, and Gallagher are enterprise within the meaning of 18 USC §§1961(4) and 1962(c) and (d).

43. The defendants Yolen, Marchese, Kaiser, Beascon Financial Solutions, Gravelle, Gregory, Falcone, Stackpole, Olmar, and Gallagher were each employed by or associated with Yolen, and enterprise engaged `in, and the activities of which affected interstate commerce within the meaning of 18 USC §§1962(c), and (d).

44. With respect to defendant Yolen, Marchese, Kaiser, Beacon Financial Solutions, Gravelle, Gregory, Falcone, Stackpole, Olmar, and Gallagher, conspired with above named defendant's to conspire, within the meaning of 18 USC §1962(c) and did conduct or participate, directly or indirectly, in the conduct of plaintiff's affairs in a faction prohibited by 18 USC §1962(c) through a pattern of activity defined by 18 USC §1961(B)(5):

(a). Multiple instances of mail fraud in violation of 18 USC §1341;
(b). Multiple instances of wire fraud in violation of 18 USC §1343;
(c). Multiple instances of embezzlement in violation of 18 USC §641;
(d). Multiple instances of lending embezzlement in vilation of 18 USC §657;
(e). Multiple instances of receiving stolen property in violation of 18 USC §662.

45. The plaintiff suffered damage as a result of the defendant Yolen's breach of their covenants of good faith and fair dealing with plaintiff, and as a proximate result of defendant Yolen's conspiracy to harm plaintiff, and his wrongful acts carried out pursuant to his conspiracy, plaintiff has been damaged in a as yet undetermined amount.

46. **Claim II:** The allegations of paragraphs 1-44 are repeated and reallaege as if fully set froth as part of this Claim II.

### AS TO DEFENDANT YOLEN TRUTH IN LENDING ACT VIOLATION
### (15 USC §§ 1601 et seq.)

47. (a). Defendant Yolen fail to disclose plaintiff's rights relating to rescission of the consumer's contract on violation of 15 USC §1635;

(b). Failure to disclose finance charges and other relation charges in violation of 15 USC §1640;

(c). Failure to disclose fiance charges and hidden fees in a clear an conspicuous nontechnical manner prior to the consummation of the transaction in violation of 15 USC §1631.

48. The defendant Yolen aforesaid acts and omissions constitute breaches of their covenant of good faith and fair dealing with plaintiff.

49. Plaintiff suffered damage as a result of the defendant Yolen breach of their good faith and fair dealing with plaintiff.

50. **Claim III:** The allegations of paragraphs 1-49 are repeated and reallege as if fully set forth as part of this Claim III.

### EQUAL CREDIT OPPORTUNITY ACT VIOLATION
### (15 USC §1691)

51. Defendant Yolen would not extend credit or release escrow funds to plaintiff without her signing documents setting and releasing defendant Yolen of liability of any violation in violation of 15 USC §1691(a)(3).

52. Defendant Yolen would aforesaid acts and omissions constitute predatory loan practice against plaintiff in violation of 15 USC §1691(a).

53. Defendant Yolen would not extend credit or issue funds directly to plaintiff because she is a woman in violation of 15 USC §1691(a).

54. The defendant Yolen aforesaid acts and omissions constitute breaches of their covenant of good faith and fair dealing with plaintiff.

55. Plaintiff suffered damage as a result of defendant Yolen breach of their covenants of good faith and fair dealing with plaintiff.

56. As a proximate result of defendant Yolen's conspiracy to harm plaintiff and his wrongful acts carried out pursuant to his conspiracy, plaintiff has been damaged in an as yet undetermined amount.

57. **Claim IV:** The allegations of paragraphs 1-56 are repeated and realleged as if fully set forth as part if this Claim IV.

### CONNECTICUT UNFAIR TRADE PRACTICE ACT

58. Defendant Yolen qualify as persons under CGS 42-110.

59. The actions of defendant Yolen referred to in this complaint taken singly or in combination unfair, deceptive, and/or immoral and/or impressive practice in paragraph(s) 23-26, 30-34 of trade and/or commerce by defendant Yolen and are in violation of CGS 42-110.

60. The defendant Yolen aforesaid acts and omissions constitute breach of their covenants of good faith and fair dealing with plaintiff.

61. Plaintiff suffered damage as a result of defendant Yolen breach of their covenants of good faith and fair dealing with plaintiff.

62. As a proximate result of defendant Yolen's conspiracy to harm plaintiff, and his wrongful acts carried out pursuant to his conspiracy, plaintiff has been damaged in an as yet undetermined amount.

63. **Claim V:** The allegations of paragraphs 1-62 are repeated and reallege as if fully set forth as part of this Claim V.

## FRAUD BY INDUCEMENT

64. Defendant Yolen made the aforesaid representations and statements to plaintiff which were inaccurate, false and misleading as alleged in paragraph(s) 23-26, 30-38.

65. Defendant Yolen conduct in making these inaccurate, false and misleading representations and statements to plaintiff induced plaintiff to act to her detriment in justifiable reliance on the advise given by the defendant as alleged in paragraph(s) 23-26, 30-38.

66.Defendant Yolen aforesaid acts and omissions constitute breaches of their covenant of good faith and fair dealing with plaintiff.

67. As a proximate result of defendant Yolen conspiracy, plaintiff has been damaged in an as yet undetermined amount.

68. **Claim VI:** The allegations of Paragraphs 1-67 are repeated and reallege as if fully set forth as part of this Claim VI.

## CONNECTICUT COMMON LAW FRAUD

69. Defendant Yolen made the aforesaid representation and statement to plaintiff were inaccurate, false and misleading as defined by Connecticut Common Law Fraud.

70. Defendant Yolen conduct on making these false and misleading representations and statements to plaintiff induce plaintiff to act to her detriment in justifiable reliance of the advise given by the defendant as alleged in paragraph(s) 23-26, 30-34 in violation of Connecticut Common Law Fraud.

71. The defendant Yolen aforesaid acts and omissions constitute breaches of their covenant of good faith and fair dealing with plaintiff.

72. As a proximate result of defendant Yolen conspiracy to harm plaintiff, and his wrongful acts carried out pursuant to his conspiracy, plaintiff has been damaged in an as yet undetermined amount.

73. **Claim VII:** The allegations of paragraphs 1-72 are repeated and reallege as if fully set forth as part of this Claim VII.

## UNDUE INFLUENCE AND DURESS

74. Defendant Yolen made the aforesaid representations and statements to plaintiff and those representations and statement were made to unduly influence plaintiff to consummate the said transaction, a alleged in paragraph(s) 17, 19-20, 28-31.

75. Defendant Yolen conduct demonstrated economic duress by refusing to release the remaining money in escrow unless plaintiff sign a waiver document releasing them from liability as alleged in paragraph(s) 29, 33-38.

76. The defendant Yolen acts and omissions constitute breaches of his covenant of good faith and fair dealing with plaintiff.

77. As a proximate result of defendant Yolen conspiracy to harm plaintiff, and his wrongful acts carried out pursuant to their conspiracy, plaintiff has been damaged in an as yet undetermined amount.

78. **Claim VIII:** The allegations of paragraphs 1-77 are repeated and reallege as if fully set forth as part of this Claim VIII.

## BREACH OF CONTRACT

79. Defendant Yolen intentionally refused and failed to properly advance all the contractual monetary payments to plaintiff as legally required by the contact.

80. Defendant Yolen breached the aforesaid agreement in that:

(a). Yolen failed to complete performance of their promise to plaintiff as described in paragraph(s) 23-26, 30-38.

(b). Yolen failed to return and money to plaintiff as described in paragraph(s) 26, 29.

81. The defendant Yolen aforesaid acts and omissions constitute breaches of the covenant of good faith and fair dealing with plaintiff.

82. Plaintiff suffered damages as a result of the defendant Yolen's breach of the covenants of good faith and fair dealing with plaintiff.

83. Plaintiff was force to borrow more money in order to
try to remedy the breach of contract.

84. As a proximate result of defendant Yolen's conspiracy
to harm plaintiff, and the wrongful acts carried out pursuant to
the conspiracy, plaintiff has been damaged in an as yet
undetermined amount.

85. **Claim IX:** The allegations of paragraphs 1-84 are
repeated and reallege as if fully set forth as part of this Claim
IX.

### AS TO DEFENDANTS MARCHESE AND BEACON FINANCIAL
### SOLUTIONS TRUTH IN LENDING ACT VIOLATION
### (15 USC §§1601 et seq.)

86. (a). Defendant Marchese and Beacon Financial
Solutions fail to disclose plaintiff's rights relating to
rescission of the consumer's contract in violation of 15 USC
§1635;

(b). Failure to disclose finance charges and other
relating charges in violation of 15 USC §1640;

(c). Failure to disclose finance charges and hidden fees
in a clear and conspicuous nontechnical manner prior to the
consummation of the transaction in violation of 15 USC §1631.

87. The defendant Marchese and Beacon Financial Solutions
aforesaid acts and omissions constitute breaches of their
covenant of good faith and fair dealing with plaintiff.

88. Plaintiff suffered damage as a result of the
defendant Marchese and Beacon Financial Solutions breach of their
covenants of good faith and fair dealing with plaintiff.

89. **Claim X:** The allegations of paragraphs 1-88 are

repeated and reallege as if fully set forth as part of this Claim X.

**EQUAL CREDIT OPPORTUNITY ACT VIOLATION (15 USC §1691)**

89. Defendant Marchese and Beacon Financial Solutions would not extend credit or release escrow funds to plaintiff without her signing documents settling and releasing defendant Marchese and Beacon Financial Solutions of liability of any violation in violation of 15 USC §1691(a)(3).

90. Defendant Marchese and Beacon Financial Solutions would not extend credit or issue funds directly to plaintiff due to plaintiff sex in violation of 15 USC §1691(a).

91. Defendant Marchese and Beacon Financial Solutions aforesaid acts and omissions constitute predatory loan practice against plaintiff in violation of 15 USC §1691(a).

92. The defendant Marchese and Beacon Financial Solution aforesaid acts and omissions constitute breaches of their covenant of good faith and fair dealing with plaintiff.

93. As a proximate result of defendant Marchese and Beacon Financial solutions's conspiracy to harm plaintiff, and his wrongful acts carried out pursuant to his conspiracy, plaintiff has been damaged in an as yet undetermined amount.

94. **Claim XI:** The allegations of paragraphs 1-93 are repeated and reallege as if fully set forth as part of this Claim XI.

**CONNECTICUT UNFAIR TRADE PRACTICE ACT**

95. Defendant Marchese and Beacon Financial Solutions qualify as persons under CGS 42-110.

96.The actions of defendant Marchese and Beacon Financial Solutions referred too in this complaint taken singly or in combination unfair, deceptive, and/or immoral and/or impressive practice in the conduct alleged in paragraph(s) 23-26, 30-38 of trade and/or commerce by defendant Marchese and Beacon Financial Solutions and are in violation of CGS 42-110.

97. The defendant Marchese and Beacon Financial Solutions aforesaid acts and omissions constitute breaches of their covenant of good faith and fair dealing with the plaintiff.

98. Plaintiff suffered damage as a result of the defendant Marchese and Beacon Financial Solutions breach of their covenants of good faith and fair dealing with plaintiff.

99. As a proximate result of defendant Marchese and Beacon Financial Solutions's conspiracy to harm plaintiff, and his wrongful acts carried out pursuant to his conspiracy, plaintiff has been damaged in an as yet undetermined amount.

100. **Claim XII: The allegations of paragraphs 1-99 are repeated and reallege as if fully set forth as part of this Claim XII.**

## FRAUD BY INDUCEMENT

101. Defendant Marchese and Beacon Financial Solutions made the aforesaid representations and statements to plaintiff which were inaccurate, false and misleading as alleged in paragraph(s) 23-26, 30-38.

102. Defendant Marchese and Beacon Financial Solutions conduct in making these inaccurate, false and misleading representations and statements to plaintiff induce plaintiff to

cat to her detriment in justifiable reliance on the advise given by the defendant as alleged in paragraph(s) 23-26, 30-38.

103. The defendant Marchese and Beacon Financial Solutions aforesaid acts and omissions constitute breaches of their covenant of good faith and fair dealing with plaintiff.

104. Plaintiff suffered damage as a result of the defendant Marchese and Beacon Financial Solutions breach of their covenants of good faith and fair dealing with plaintiff.

105. As a proximate result of defendant Marchese and Beacon Financial Solutions's conspiracy to harm plaintiff, and his wrongful acts carried out pursuant to his conspiracy, plaintiff has been damaged in an as yet undetermined amount.

106. **Claim XII:** The allegations of paragraphs 1-105 are repeated and reallege as if fully set forth as part of this Claim XIII.

### CONNECTICUT COMMON LAW FRAUD

107. Defendant Marchese and Beacon Financial Solutions made the aforesaid representation and statement to plaintiff and those representations and statements to plaintiff were inaccurate, false and misleading as defined by Connecticut Common Law Fraud.

108. Defendant Marchese and Beacon Financial Solutions's conduct in making these representation false and misleading representations and statements statement to plaintiff induced plaintiff to act to her detriment in justifiable reliance on the advise given by the defendant as alleged in paragraph(s) 23-26, 30 in violation of Connecticut Common Law Fraud.

109. The defendant Marchese and Beacon Financial Solutions aforesaid acts and omissions constitute breaches of their covenant of good faith and fair dealing with plaintiff.

110. Plaintiff suffered damages as a result of the defendant Marchese and Beacon Financial Solutions breach of their covenants of good faith and fair dealing with the plaintiff.

111. As a proximate result of defendant Marchese and Beacon Financial Solutions's conspiracy to harm the plaintiff, and his wrongful acts carried out pursuant to his conspiracy, plaintiff has been damaged in an as yet undetermined amount.

112. **Claim IVX:** The allegations of paragraphs 1-111 are repeated and reallege as if fully set forth as part of this Claim IVX.

## UNDUE INFLUENCE AND DURESS

113. Defendant Marchese and Beacon Financial Solutions made the aforesaid representations and statements to plaintiff and those representations and statements were made to unduly influence plaintiff to consummate the said transition, as alleged in paragraph(s) 17, 19-20, 28-31.

114. Defendant Marchese and Beacon Financial Solutions conduct demonstrated economic duress by refusing to release the remaining money in escrow unless plaintiff signed waiver document releasing defendant from liability as alleged in paaragraph(s) 33-38.

115. The defendant Marchese and Beacon Financial Solutions aforesaid acts and omissions constitute breaches of their covenant of good faith and fair dealing with plaintiff.

116. Plaintiff suffered damage as a result of the defendant Marchese and Beacon Financial Solutions breach of their covenants of good faith and fair dealing with plaintiff.

117. As a proximate result of defendant Marchese and Beacon Financial Solutions's conspiracy to harm plaintiff, and his wrongful acts carried out pursuant to his conspiracy, plaintiff has been damaged in an as yet undetermined amount.

118. **Claim VX:** The allegations of paragraphs 1-117 are repeated and reallege as if fully set forth as part of this Claim VX.

### BREACH OF CONTRACT

119. Defendant Marchese and Beacon Financial Solutions's intentionally refused and failed to properly advance all the contractual monetary payments to plaintiff as legally required by the contract.

120. Defendant Marchese and Beacon Financial Solutions breached the aforesaid agreement in that:

(a). Marchese and Beacon Financial Solutions failed to complete performance of his promise to plaintiff as described in paragraph(s) 23-26, 30-38.

(b). Marchese and Beacon Financial Solutions failed to return any money to plaintiff as described in paragraph(s) 26, 29.

121. The defendant Marchese and Beacon Financial Solutions aforesaid acts and omissions constitute breaches of their covenant of good faith and fair dealing with the plaintiff.

122. Plaintiff suffered damage as a result of the defendant Marchese and Beacon Financial Solutions breach of their covenants of good faith and fair dealing with plaintiff.

123. Plaintiff was forced to borrow more money in order to try to remedy the breach of contract.

124. As a proximate result of defendant Marchese and Beacon Financial Solutions's conspiracy to harm plaintiff, and his wrongful acts carried out pursuant to his conspiracy, plaintiff has been damaged in an as yet undetermined amount.

125. Claim VXI: The allegations of paragraphs 1-124 are repeated and reallege as if fully set forth as part of this Claim VXI.

### AS TO DEFENDANT KAISER CONNECTICUT UNFAIR TRADE PRACTICE ACT

126. Defendant Kaiser qualify as persons under CGS 42-110.

127. The actions of defendant Kaiser referred to in this complaint taken single or in combination unfair, deceptive, and/or immoral and/or impressive practice in the conduct alleged in paragraph(s) 23-26, 30 of trade and/or commerce by defendant Kaiser and are in violation of CGS 42-110.

128. The defendant Kaiser aforesaid acts and omissions constitute breaches of their covenant of good faith and fair dealing with plaintiff.

129. Plaintiff suffered damage as a result of the defendant Kaiser breach of their covenants of good faith and fair dealing with plaintiff.

130. As a proximate result of defendant Kaiser's conspiracy to harm plaintiff,and his wrongful acts carried out pursuant to his conspiracy, plaintiff has been damaged in an as yet undetermined amount.

131. **Claim VXII:** The allegations of paragraphs 1-130 are repeated and reallege as if fully set forth as part of this Claim VXII.

### FRAUD BY INDUCEMENT

132. Defendant Kaiser made the aforesaid representations and statements to plaintiff which were inaccurate, false and misleading as alleged in paragraph(s) 23-26, 30.

133. Defendant Kaiser conduct in making these inaccurate, false and misleading representations and statements to plaintiff induced plaintiff to act to her detriment in justifiable reliance on the advise given by the defendant as alleged in paragraph(s) 23-26, 30.

134. The defendant Kaiser aforesaid acts and omissions constitute breaches of their covenant of good faith and fair dealing with plaintiff.

135. Plaintiff suffered damage as a result of the defendant Kaiser breach of their covenants of good faith and fair dealing with plaintiff.

136. As a proximate result of defendant Kaiser's conspiracy to harm plaintiff, and his wrongful acts carried out pursuant to his conspiracy, plaintiff has been damaged in an as yet undetermined amount.

137. **Claim XVIII:** The allegation of paragraphs 1-136 are repeated and reallege as if fully set forth as part of this Claim XVIII.

### CONNECTICUT COMMON LAW FRAUD

138. Defendant Kaiser made the aforesaid representation and statement to plaintiff and those representations and statements to plaintiff were inaccurate, false and misleading as defined by Connecticut Common Law Fraud.

139. Defendant Kaiser's conduct in making these representations false and misleading representations and statements to plaintiff induced plaintiff to act to her detriment in justiciable reliance on the advise given by the defendant as alleged in paragraph(s) 23-26, 30 in violation of Connecticut Common Law Fraud.

140. The defendant Kaiser aforesaid acts and omissions constitute breaches of their covenants of good faith and fair dealing with plaintiff.

141. Plaintiff suffered damage as a result of the defendant Kaiser breach of their covenants of good faith and fair dealing with plaintiff.

142. As a proximate result of defendant Kaiser's conspiracy to harm plaintiff, and his wrongful acts carried out pursuant to his conspiracy, plaintiff has been damaged in an as yet undetermined amount.

143. **Claim XIX:** the allegations of paragraphs 1-142 are repeated and reallege as if fully set forth as part of this Claim XIX.

## UNDUE INFLUENCE AND DURESS

144. Defendant Kaiser made the aforesaid representations and statements to plaintiff and those representations and statement were made to unduly influence plaintiff to consummate the said transaction, as alleged in paragraph(s) 17, 19-20, 28-31.

145. Defendant Kaiser conduct demonstrated economic duress by refusing to return any money after he refuse to do any work as alleged in paragraph(s) 29.

146. The defendant Kaiser aforesaid acts and omissions constitute breaches of their covenant of good faith and fair dealing with the plaintiff.

147. Plaintiff suffered damage as a result of the defendant Kaiser breach of their covenant of good faith and fair dealing with plaintiff.

148. As a proximate result of defendant Kaiser's conspiracy to harm plaintiff, and his wrongful acts carried out pursuant to his conspiracy, plaintiff has been damaged in as as yet undetermined amount.

149. **Claim XX:** The allegations of paragraphs 1-148 are repeated and reallege as if fully set forth as part of this Claim XX.

## BREACH OF CONTRACT

150. Defendant Kaiser's intentionally refused and failed to return all monetary payments he received after he failed to do any work as legally required by the contract.

151. Defendant Kaiser breached the aforesaid agreement in that:

(a). Kaiser failed to complete performance of his promise to plaintiff as described in paragraph(s) 23-26, 30.

(b). Kaiser failed to return any money to plaintiff as described in paragraph(s) 26, 29.

152. The defendant Kaiser aforesaid acts and omissions constitute breaches of their covenant of good faith and fair dealing with plaintiff.

153. Plaintiff suffered damage as a result of the defendant Kaiser breach of their covenants of good faith and fair dealing with plaintiff.

154. Plaintiff was forced to borrow more money in order to try to remedy the breach of contact.

155. As a proximate result of defendant Kaiser's conspiracy to harm plaintiff, and his wrongful acts carried out pursuant to his conspiracy, plaintiff has been damaged in an as yet undetermined amount.

156. Claim XXI: the allegations of paragraphs 1-155 are repeated and realleged as if fully set forth as part of this Claim XXI.

## AS TO DEFENDANT FALCONE AND STACKPOLE MALPRACTICE

157. Defendant's Falcone and Stackpole was at all times mentioned, copartners and duly licensed attorney's in the State of Connecticut, with their place of business located at 334-336 Maine Street, West Haven, Connecticut 06516.

158. That at all times mentioned, defendant's Falcone and Stackpole held themselves out to the general public as being possessed with the skill and knowledge of the profession of the practice of law.

159. Defendant Falcone and Stackpole had a duly to be honest, forthright, truthful, and possessed and knowledge on fully attending to plaintiff's interests, but failed to exercise such care, ordinary and reasonable skills, diligence to prevent prejudice and damage to plaintiff as described in paragraphs 15-35.

160. Defendant Falcone and Stackpole was duly bound to advise plaintiff of all law and rules of the contract, but did not.

161. Defendant Falcone and Stackpole entered upon a scheme and a course of conduct to conceal from plaintiff all finance charges, failed to inform plaintiff that she had the right to rescission the contract, failed to advice plaintiff that the contract was a form of predatory lending, failed to inform plaintiff that she did not have to use the services of Kaiser as the building contractor, and breach their fiduciary obligation which prejudiced plaintiff.

162. Defendant Falcone and Stackpole failed to faithfully and properly preform their legal services on behalf of plaintiff in that they violated their oath by misrepresenting virtue of their actions and implied representation of truth, fidelity and honestly required of them as a duly admitted attorney's in the state of Connecticut.

163. As a direct result of the Defendants Falcone and Stackpole failure to perform their professional duties and fiduciary obligation properly on behalf of plaintiff to honor their commitment as attorneys to plaintiff, plaintiff has continued to sustain financial loss and anguish, aggravation and mental suffering and has been caused expensed and monetary loss therefore.

164. **Claim XXII:** The allegations of paragraphs 1-163 are repeated and reallege as if fully set forth as part of this Claim XXII.

## AS TO DEFENDANT OLMAR MALPRACTICE

165. At all times mentioned, defendant Olmar was duly licensed to practice as attorney and counselor at law under the laws of the state of Connecticut.

166. On December 26, 2006, defendant Olmar accepted a retainer to undertake the prosecution of an action in a proper, skillful and diligent manner as attorney for plaintiff.

167. Defendant Olmar negligently, intentionally improperly and unskillfully did not commence any action on plaintiff's behalf.

168. Defendant Olmar entered upon a scheme and a course of conduct to get plaintiff to waive her rights to future litigation against the above named defendants in order to receive his retainer fee as described in paragraph 32.

169. Defendant Olmar failed to faithfully and properly preform his legal services on behalf of plaintiff in that he violated his oath and obligation to plaintiff by intentionally

misrepresenting by virtue of his actions his implied representation of truth, fidelity honesty required of him as a duly admitted attorney in the state of Connecticut.

170. **Claim XXIII:** The allegations of paragraphs 1-169 are repeated and reallege as if fully set forth as part of this Claim XXIII.

### AS TO DEFENDANT GALLAGHER

171. At all times mentioned, defendant Gallagher, was the Police Commissioner for the time of West Haven in the state of Connecticut.

172. That at all times mentioned defendant Gallagher held himself out to the general public as being the Police Commissioner.

173. Defendant Gallagher has a duly to investigate, forthright in fully plaintiff's complaint against the above name defendants as alleged in paragraphs 15-38.

174. As a direct result of defendant Gallagher failure to perform his professional duty as the Police Commissioner properly on behalf of plaintiff to honor his commitment as Police Commissioner, plaintiff has continued to sustain financial loss and anguish, aggravation and mental suffering and has been caused expense and monetary loss therefore.

### E. REQUEST AND PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that judgement be entered against defendants Timothy B. Yolen, Anthony J. Marchese, Anthony Kaiser, Beacon Financial Solutions, LLC, Peter Gravelle, John

Gregory, Vincent Falcone, Esq., Daniel Stackpole, Esq., Morris
Olmar, Esq., and Thomas E. Gallagher, as following:

### A. Monetary Relief

1. For damages against Defendants, and each of them,
jointly and severally, in and as yet under determined amount, the
amount duly trebled in accordance with 18 USC §1964(c);

2. For punitive damages, in an as yet under determined at
trial, against the Defendants, and each of them, jointly and
severally; and

### B. Equitable Relief

1. An accounting of all benefits, consideration and
profits received and/or paid, directly, including, but not
limited to, the imposition of constructive trusts with tracing;

2. The imposition and execution if equitable liens;

3. Order of divestiture of any interest, including real
or personal property, money, or obligations or otherwise,
wrongfully obtained, directly of indirectly, from the defendants;
and

4. Any restrictions that may be appropriate on the future
conduct or activities of any person.

### C. Other Relief

1. Grant plaintiff a declaratory judgment that the acts,
policies and practices of defendants violated provisions of the
Consumer Credit Protection Act, 15 USC §1601 et seq.;

2. Grant plaintiff an injunction restraining defendants,
their agents, employees and those acting in concert with them

from maintaining a custom, policy, practice or procedure that is not designed to comply with the requirements of the above-mentioned federal laws.

3. Rescind the contacts, mortgages, and other agreements entered into be plaintiff.

4. Award plaintiff her costs herein, including court costs and fees.

5. Grant plaintiff such further relief as the Court deems just and proper.

### F. JURY DEMAND

6. Plaintiff wishes to have a jury trial.

_____
Original signature of attorney
(if any)

_____

_____

_____
Attorney's address and phone
number

_Alfreda Adams_
Plaintiff's Original Signature

_Alfreda Adams_
Printed Named

90 Rockdale  Rd.

West Haven, CT 06516

203-931-0608
Plaintiff's address and phone
number

### DECLARATION UNDER PENALTY OF PERJURY

The undersigned declares under penalty of perjury that she in the plaintiff in the above action, that she has read the above complaint and that the information contained in the complaint is true and correct. 28 USC §1748; 18 USC §1621.

Executed at: 90 Rockdale Rd., West Have, CT 06516 on

_10-14-11_
DATED

_Alfreda Adams_
Alfreda Adams